IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDGAR GUZMAN, | : | CIVIL ACTION NO. **1:CV-04-2527** |
| Plaintiff | : | |
| | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| P. A. LAINO, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

Plaintiff, Edgar Guzman, formerly an inmate at the United States Penitentiary at Allenwood ("USP-Allenwood"),[1] filed, *pro se*, this *Bivens*[2] action pursuant to 28 U.S.C. § 1331 on November 22, 2004, naming as Defendants three (3) individuals employed at USP-Allenwood by the Federal Bureau of Prisons ("BOP"). (Doc. 1).  Plaintiff also filed motions for leave to proceed *in forma pauperis*. (Docs. 2 & 6).  The Plaintiff claims that the prison medical staff denied his required medical treatment for his left knee and leg impairment, and requests the Court to award him monetary damages against the Defendants in their individual capacities.   (Doc. 1, attached handwritten page).

---

[1]Plaintiff is currently incarcerated at USP-Canaan.  Doc. 25.

[2]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

Since the Plaintiff filed applications to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, the Prison Litigation Reform Act of 1995,[3] (the "PLRA"), we reviewed the Complaint under 28 U.S.C. §1915(e)(2)(B).  We found that this action was subject to dismissal as to Defendants Warden Williamson and P.A. Bennett on all claims pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).  We also determined that Plaintiff should be allowed to proceed as against Defendant P.A. Laino as to his Eighth Amendment claim.  (Doc. 9).

On April 14, 2005, the District Court entered an Order in which it adopted our Report and Recommendation as modified therein.  Specifically, the District Court found that the Plaintiff's exhibits attached to his complaint show that Defendant P.A. Bennett may have had knowledge of and participated in the alleged denial of medical care to the Plaintiff. (Doc. 11).  Thus, Defendant Bennett was not dismissed from this case.  Further, the District Court dismissed Defendant Warden Williamson without prejudice and granted Plaintiff leave to file an amended complaint by May 4, 2005, for the limited purpose of setting forth facts with respect to the alleged involvement of Defendant Warden Williamson.  The District Court then remanded the case to the undersigned.

On April 22, 2005, the Plaintiff timely filed an Amended Complaint.  The Plaintiff's amended pleading contained allegations as to the involvement of Defendant Warden Williamson, as well as allegations against a new Defendant, namely P.A. Holtzapple.  (Doc. 13).  The Plaintiff also included allegations against Defendant Laino, who was not dismissed from this case.  The Plaintiff did not name or assert any personal involvement against Defendant Bennett in his Amended Complaint.  Plaintiff raised  allegations against a new Defendant, *i.e.,* P.A. Holtzapple,

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

2

in his Amended Complaint and requested that Holtzapple be added as a party Defendant in this

case. (Doc. 13, p. 2). Plaintiff alleged that Defendant Laino and P.A. Holtzapple failed to ensure

his required medical needs for his left leg were met, despite knowing full well that his leg was

"rotting away." (Doc. 13, p. 1). We construed Plaintiff as seeking to add P.A. Holtzapple as a party

Defendant in place of Defendant P.A. Bennett. On May 2, 2005, we recommended that P.A.

Holtzapple be added as a Defendant and that Defendant Bennett be dismissed. (Doc. 14). We

also recommended that Defendant Troy Williamson, Warden, be dismissed pursuant to 28 U.S.C.

§1915(e)(2)(B)(ii). We further recommended that Plaintiff's case be remanded to the undersigned

for further proceedings as to the remaining Defendants, Laino and Holtzapple, with respect to the

Eighth Amendment denial of medical care claim.

On August 5, 2005, the District Court issued an Order and adopted our Report and

Recommendation (Doc. 14). (Doc. 16). On August 10, 2005, we granted Plaintiff's *in forma*

*pauperis* motion and directed service of both of Plaintiff's pleadings on the two remaining

Defendants. (Doc. 17). Defendants were served and some discovery ensued.[4]

---

[4]Defendants filed a Motion for Protective Order with respect to additional discovery which Plaintiff sought after he was provided with his medical records concerning the treatment for his left knee at USP-Allenwood. (Doc. 33). Defendants also attached pertinent records of Plaintiff as exhibits to their Statement of Material Facts ("SMF") filed with their Motion to Dismiss and/or for Summary Judgment. (Doc. 31). On March 1, 2006, we issued an Order which granted Defendants' Motion for Protective Order and stayed discovery until Defendants' dispositive motion was resolved by the Court. (Doc. 45).

We agreed with Defendants (Doc. 34, p. 4 & Doc. 44, p. 2) that based on the discovery documents which Defendants provided to Plaintiff, along with the records attached to their SMF, Plaintiff did not require his additional discovery to defend against Defendants' dispositive motion, especially since the relevant additional discovery requests, such as treatment by an orthopedic specialist, were addressed in the records Plaintiff was provided. In fact, Plaintiff attached as exhibits to his Brief in opposition to Defendants' dispositive Motion, copies of his

On November 21, 2005, remaining Defendants, Laino and Holtzapple, jointly filed a Motion to Dismiss or for Summary Judgment. **(Doc. 29).** Defendants filed their Statement of Material Facts ("SMF") with attached exhibits and their support Brief on December 2, 2005. (Docs. 31 & 30, respectively). On February 8, 2006, Plaintiff filed his Brief in opposition to Defendants' Motion, after being granted extensions of time. As noted, Plaintiff attached exhibits to his Brief. (Doc. 38). Plaintiff also filed a Supplemental Brief on February 8, 2006. (Doc. 39). Defendants filed a Reply Brief on February 17, 2006. (Doc. 43). On March 7, 2006, Plaintiff filed a Brief in Support of his Motion to Dismiss Defendants' dispositive motion. (Doc. 46).

Defendants' stated dispositive Motion is now ripe for disposition.[5] Since both parties have submitted evidence outside of the pleadings and refer to it in support of their positions, we shall consider this evidence, and treat Defendants' present Motion as one for summary judgment. *See* Fed. R. Civ. P. 12(b).

## II. Motion for Summary Judgment Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

---

medical records. (Doc. 38).

[5]The undersigned was assigned this case for pre-trial matters.

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

## III. Discussion.

The District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp.

5

1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992).

In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him

of a federal right, and that the person who caused the deprivation acted under color of federal law.

*See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa.

1992).  Additionally, a defendant's conduct must have a close causal connection to the plaintiff's

injury in order for liability to attach.  *Martinez v. California*, 444 U.S. 277, 285 (1980).

Each named defendant must be shown, through the complaint's allegations, to have been

personally involved in the events or occurrences upon which Plaintiff's claims are based.  As the

Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*   Courts have

also held that an allegation seeking to impose liability on a defendant based on supervisory status,

without more, will not subject the official to liability. *See Rode,* 845 F.2d at 1208.

Remaining  Defendants in this case are the following two (2) individual employees of USP-

Allenwood: Physician's Assistant ("P.A.") Holtzapple; and Health Services Administrator ("HSA")

Laino.[6]

---

[6]While Plaintiff indicates in his amended pleading that Laino was a P.A. (Doc. 13, p. 1,
caption &  p. 2), and also that Laino was the Hospital Administrator (*Id.*, p. 1), the record reveals
that Defendant Laino is actually the HSA.  Doc. 31, Ex. 1, p. 1.  Defendant Holtzapple is a P.A.,
as Plaintiff correctly indicates.  *Id.*, p. 2.

In this case, as stated, the Plaintiff alleges that Defendant Laino and P.A. Holtzapple refused to properly treat his serious leg condition.  Specially, Plaintiff alleges as follows:

> Plaintiff states as follows: On 6/8/04 Plaintiff filed a written
> request to the medical dept. staff P.A. Holtzapple and Hospital
> Administrator Laino, also on 7/16/04 P.A. Holtzapple responded
> yet never followed orders that were set forth by the orthopedic
> specialist on 11/3/03, the specialist ordered an MRI on May 4, 2004 that
> revealed that an oblique tear to the lateral miniscus, which will cause
> Plaintiff's leg to rot away if no surgery is performed.  A follow-up
> was given on June 8, 2004 demonstrating that this major problem
> will worsen because of loss of mobility of the left leg.  In other
> word (sic) my leg is "rotting away" soon they (sic) whether they want to
> or not, Plaintiff will be confined to a wheelchair because Laino,
> and P.A. Holtzapple failed to ensure my medical needs are met with
> full knowledge that Plaintiff (sic) leg is rotting away.

(Doc. 13, p. 1).

Plaintiff also alleges that Defendant Holtzapple failed to ensure that he received "serious medical attention." (*Id.*, p. 2).  Plaintiff avers that he submitted a written request to Holtzapple and that she responded to it on July 12, 2004, and that despite knowing his "entire medical situation" she failed to follow the orders of the orthopedic specialist.  (*Id.*, pp. 1-2).  In his original pleading, Plaintiff alleged that he requested that the prison medical department and Defendant Laino provide him with medical treatment for his left knee impairment "on 5 different occassions (sic) as perscribed (sic) by the orthopedic specialist".  (Doc. 1, p. 4, handwritten complaint dated November 15, 2004).  Plaintiff states that his MRI showed that he required medical treatment for his left knee condition, but that despite this test, as of November 15, 2004, he received "no surgery, no medical nothing." (*Id.*).  Plaintiff avers that Defendant Laino told him that he (Defendant ) was

not going to do anything for him even though his medical exam showed that he was experiencing extreme pain and that his condition was getting worse.  Plaintiff avers that his pain was radiating from his "left knee to my rectum, at times my knee gives out simply just walking back and forth to work."  (*Id*.).

As mentioned, this Eighth Amendment claim against the two individual Defendants was allowed to  proceed.

Plaintiff asserts an Eighth Amendment claim of denial of proper medical care as against Defendants.  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991);  *Estelle v. Gamble*, 429 U.S. 97 (1976).  An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner.  *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992).  The official must know of and disregard an excessive risk to inmate health or safety.  *Farmer,* 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious.

*Estelle*, 429 U.S. at 106.

Plaintiff claims that Defendants refused to give him medical treatment for his serious knee condition that was ordered by an orthopedic specialist. Further, Plaintiff avers that Defendants did not make sure that he received surgery. Plaintiff alleges in his amended pleading that if surgery was not performed on his left knee, it would "cause his leg to rot away" since his left leg would be less mobile. (Doc. 13, p. 1).[7] We have previously found, for purposes of PLRA screening, that Plaintiff alleged sufficient personal involvement to proceed against the stated two Defendants in a civil rights action.

Defendants raise two arguments in their instant Motion, namely that Defendant Laino did not have any personal involvement regarding the medical treatment of Plaintiff's knee, and that both Defendants are entitled to qualified immunity since they were not deliberately indifferent to Plaintiff's medical needs. (Doc. 30, p. 1). We address first the issue of whether Defendant Laino had sufficient personal involvement with the treatment of Plaintiff's left knee.

Initially, we agree with Defendants that Plaintiff has failed to properly respond to their SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 43, p. 2). Defendants have also cited to evidentiary support for each of their paragraphs contained in their SMF as required. (Doc. 31). Therefore, we accept Defendants' SMF as uncontroverted and incorporate it entirely herein by reference. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party

___

[7]Plaintiff attached his administrative remedies requests regarding his current claim to his original Complaint, Doc. 1. We also note that Defendants do not raise failure to exhaust administrative remedies as an affirmative defense in their present Motion.

that were not clearly disputed by the other party with sufficient citation to the record).   As in the *Paranich* case, our Plaintiff does not respond to Defendants' SMF as required by L.R. 56.1, and we also adopt all of Defendants' SMF since they are not controverted by Plaintiff with citation to the record.[8]

    *1.  Personal involvement of Defendant Laino*

    As stated, in his original pleading, Plaintiff alleges that on June 6, 2004, he requested Defendant "Laino to administer medical treatment to my  left knee  on 5 different occasions (sic) as prescribed (sic) by the orthopaedic specialist... ."  Plaintiff alleges that as of November 15, 2004, no surgery was performed on his knee and that he did not receive any medical care.  Plaintiff avers that Defendant Laino told him that he was not going to do anything and to stop bothering him and his staff despite his (Plaintiff's) medical exam, which showed that he (Plaintiff) was in extreme pain and his condition was getting worse.  (Doc. 1, attached handwritten Complaint).

    Defendants argue that Defendant Laino's sole personal involvement in Plaintiff's medical treatment was through his responses to Plaintiff's administrative grievances.  (Doc. 43, p. 3).  Defendants maintain that Plaintiff is attempting to hold Laino liable under *respondeat superior,* which is clearly not a basis cognizable under § 1331.  (*Id.*).

    In his opposition Brief, Plaintiff states that he sent an Inmate Request to Staff Form to Defendant HSA Laino on January 3, 2004, in which he indicated that he was in severe pain and he requested an MRI as directed by an orthopedic specialist.  (Doc. 38, p. 3).  Plaintiff attached a copy of his request to staff form to his Brief, Doc. 38, Ex. C.  Plaintiff stated in his form that he has

---

    [8]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

been waiting for three (3) months for an MRI and he requested Laino to get him one as soon as possible.  Plaintiff states in his Brief that "Defendant Laino took exactly two months, as you can see in Exhibit C to answer the Plaintiff's request.  HSA Laino answered the Plaintiff's request on March 3, 2004."   Plaintiff argues that this delayed response to his request form "shows deliberate indifference on behalf of Defendant Laino."  (Doc. 38, p. 3).[9]

The parties agree, and the evidence shows, that on November 3, 2003, Dr. Lin, an orthopedic surgeon, evaluated Plaintiff and recommended an MRI of Plaintiff's knee.  (Doc. 30, p. 5 & Doc. 38, p. 3 & Doc. 31, Ex. 1, p. 3, ¶ 10.).  Plaintiff states in his Brief that despite his request to Defendant Laino for an MRI, Laino violated the Eighth Amendment by not responding to his request for two (2) months, and he states that he did not receive his MRI until May 4, 2004, 6 months after Dr. Lin had recommended it.   (Doc. 38, p. 4).   Plaintiff also disputes Dr. Lin's recommendation that surgery was not indicated for Plaintiff's knee and that a non-operative treatment plan be followed for his knee.  Plaintiff feels that the only option for his knee is surgery. (*Id.*).

There is no dispute that Plaintiff did, in fact, have an MRI on May 4, 2004, which showed an oblique tear of the posterior horn of the lateral meniscus, degenerated medial meniscus, and early bone edema of the medial femoral condyle.  (Doc. 31, Ex. 1, p. 4, ¶ 12. & Att. #2 marked

---

[9]The page numbers of Plaintiff's Brief (Doc. 38) referred to herein reflect the actual page numbers, and not Plaintiff's numbering, which begins with page (1) on the actual page 2.

p. 19.).[10] There is no dispute that Dr. Lin opined on June 8, 2004 that arthroscopic surgery for Plaintiff's torn lateral meniscus was not indicated.  (Doc. 31, Ex. 1, p. 4, ¶ 13. & Att. #2 marked p. 20).  Dr. Lin opined that if Plaintiff had a "scope" surgery there was the potential for Plaintiff to lose even more motion in his knee.  *(Id.)*.  Dr. Lin opined that a non-operative treatment plan was indicated for Plaintiff.  Thus, Plaintiff is largely disagreeing with the medical opinion of the expert orthopedic surgeon over whether surgery on his knee was indicated.

Notwithstanding Plaintiff's Ex. C which shows that Defendant Laino did not respond to Plaintiff's inmate request form until March 3, 2004, Plaintiff's very own evidence shows that Defendant Laino did not receive Plaintiff's form until March 1, 2004.  (Doc. 38, Ex. C).  Laino responded, two (2) days after he received Plaintiff's form,  that Plaintiff was on the list for an MRI.  Plaintiff received his MRI on May 4, 2004, and on June 8, 204, Dr. Lin found that surgery was not indicated for Plaintiff and that surgery may cause Plaintiff to loose more mobility.

Further, the record reveals that Liano did not provide any medical treatment to Plaintiff's left knee.  Laino was not Plaintiff's P.A.  (Doc. 31, Ex. 1, pp. 2-5).  There is no evidence that Laino refused to provide Plaintiff with treatment for his knee condition.  Defendant Laino merely signed Plaintiff's follow up orthopedic consult after his MRI.  (Doc. 31, Att. 2, p. 20).  Plaintiff offers no evidence that Defendant Laino was involved with his medical care of his knee.  Plaintiff's medical records attached to his Brief, Doc. 38, Ex. A and Ex. B, do not show that Laino was involved with

---

[10]The paragraph numbers of Defendant Laino's Declaration cited in Defendants' Brief, Doc. 30, p. 5, do not correspond to the actual paragraph numbers in the Declaration.  Doc. 31, Ex. 1.

his care.

Thus, the undisputed evidence shows that Defendant Laino did not have the requisite personal involvement with Plaintiff's Eighth Amendment claim of denial of medical care, and that Defendant Laino, even if he was personally involved with Plaintiff's care by responding to Plaintiff's MRI request, was not deliberately indifferent to Plaintiff's serious medical needs.  We concur with Defendant (Doc. 30, p 12) that Plaintiff is disputing the opinion of Dr. Lin, which was that surgery was not indicated for his left knee condition.  Plaintiff believes that due to the pain in his knee "that the only option for his knee is surgery." (Doc. 38, p. 4).  However, mere disagreement with the doctor's opinion as to the proper care for Plaintiff, *i.e.* surgery versus a non-operative treatment plan, does not amount to an Eighth Amendment violation, as stated above.  We find that Plaintiff has not sufficiently established  any violations of his rights regarding the denial of medical treatment at USP-Allenwood, an Eighth Amendment claim, as against Defendant Laino.   Plaintiff does not show what Defendant Laino  personally did to refuse to provide him with any treatment for his specified serious medical left knee condition.   Plaintiff provides no evidence of  personal involvement as to Defendant Laino with respect to his denial of medical care claim other than to show that Laino responded to Plaintiff's MRI request form two (2) days after he received it.  The evidence also shows that Plaintiff then received an MRI and a follow-up orthopedic specialist consult.  We find that Plaintiff has not sufficiently established an Eighth Amendment claim of denial of proper medical care as against HSA Laino.

A Defendant prison official cannot be held liable for the actions of others since the doctrine of *respondeat superior* is not an acceptable basis for civil rights liability.  *See Durmer v. O'Carroll,*

991 F. 2d 64, 69 (3d Cir. 1993).   Liability may only be based upon Defendant's personal involvement in conduct amounting to a constitutional violation.  *Hampton v. Holmesburg Prison Officials*, 547 F. 2d 1077 (3d Cir. 1976).   As discussed, the Plaintiff does not allege sufficient personal involvement by the stated supervisory defendant HSA Laino.  The evidence does not show that HSA Laino played any role in Plaintiff's Eighth amendment claim.  Therefore, Plaintiff has not stated a cognizable *Bivens* claim against Laino, and he should be dismissed as a Defendant.

Therefore, based on *Rode, supra* and *Sutton v. Rahsheed*, 323 F.3d 236, 249-50 (3d Cir. 2003), we agree with Defendants that Defendant Laino is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim against him.

### 2. *Eighth Amendment claim against Defendant Holtzapple*

Defendants argue that P.A. Holtzapple's conduct did not rise to the level of a Constitutional violation, and thus she is entitled to qualified immunity.   Defendants contend that based on Plaintiff's medical records, Holtzapple was not deliberately indifferent to Plaintiff's serious medical needs.   In his Supplemental Brief (Doc. 39), Plaintiff addressed the qualified immunity issue. Plaintiff states that he has shown why and how Defendants delayed and denied him medical treatment for his serious medical needs.  Plaintiff argues that based on his initial visits to the medical department, Defendants ignored the obvious fact that he had a serious medical condition that required more than mere pain medication.  (Doc. 39, p. 2).  Plaintiff states that this shows that Defendants understood their conduct was prohibited but that they acted in a malicious manner in total disregard for his serious medical need.  (*Id*.).

14

As discussed above, we have found that Defendant Liano was not sufficiently involved with the care of Plaintiff, and that Laino did not delay in responding to Plaintiff's request for an MRI as ordered by the specialist. Thus, we limit our discussion as to Defendant Holtzapple's conduct with respect to the qualified immunity issue. We agree with Defendants that Holtzapple is entitled to qualified immunity.

Plaintiff fails to address the undisputed fact in his briefs that it was Dr. Lin, an orthopedic surgeon, who recommended that Plaintiff be treated with a non-operative treatment plan, including pain medications for his left knee impairment, and not Defendants Holtzapple. Dr. Lin specifically found that Plaintiff could not flex his knee enough during the doctor's exam on June 8, 2004 for his knee to be symptomatic. Dr. Lin opined that if Plaintiff had the scope surgery, there was the distinct possibility that he would lose even more motion in his knee. (Doc. 31, Ex. 1, Att. #2, p. 20). Plaintiff mistakenly continues to try and attribute his non-operative treatment plan to our Defendants. However, the record establishes beyond all doubt that it was the opinion of the expert doctor, based both on objective medical tests (MRI) and the doctor's own physical exams of Plaintiff, that the proper treatment course for his knee impairment was a non-operative treatment plan, and pain medications were prescribed for Plaintiff. Indeed, on July 2, 2004, Plaintiff was again advised by P.A. Sarain that surgery on his knee was not indicated or recommended by the orthopedic specialist. P.A. Sarain then continued Plaintiff on pain medication. (*Id.*, p. 21).

Defendants argue that they are entitled to qualified immunity. The Supreme Court stated that the qualified immunity question must be resolved "at the earliest possible stage in the litigation." *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112

S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). "Qualified immunity is 'an entitlement not to stand

trial or face the other burdens of litigation.' "*Id*. (quoting *Mitchell v. Forsyth*, 472 U.S. at 526, 105

S.Ct. 2806 (1985)). "The privilege is 'an immunity from suit rather than a mere defense to liability,

and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"

*Id*. Based on *Saucier,* as Defendants recognize (Doc. 30, pp. 7-9, Doc.. 43, p. 3), it is clear that

claims of qualified immunity are to be evaluated using a two-step process. First, the court must

determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional

violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry

is at an end; the officer is entitled to immunity. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.

2001). In our case, as discussed below, we find that Plaintiff has failed to establish a Constitutional

violation by Defendant Holtzapple. Thus, Defendant Holtzapple is entitled to qualified immunity.

"Once it is determined that evidence of a constitutional violation has been adduced, courts

evaluating a qualified immunity claim move to the second step of the analysis to determine whether

the constitutional right was clearly established.... The focus in this step is solely upon the law.... If

the requirements of the law would have been clear, the [individual] must stand trial." *Id*. at 136-37.

Further guidance on the issue can be found in *Anderson v. Creighton*, 483 U.S. 635 (1987). "First,

*Anderson* held that, whether a government official asserting qualified immunity could be personally

liable for conduct that allegedly violated a constitutional or statutory violation depended on the

'objective reasonableness' of the action. *Id*. at 639. Under this standard, government officials are

shielded from civil liability not based on their subjective understanding of the law but only 'as long

as their actions could reasonably have been thought consistent with the rights they are alleged to

have violated.' *Id*.  Second, *Anderson* defined more specifically the meaning of a 'clearly

established right':

> The contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing
> violated that right.  This is not to say that an official action is
> protected by qualified immunity unless the very action in
> question has been previously held unlawful, but it is to say
> that in the light of preexisting law the unlawfulness must be
> apparent.

*Anderson*, 483 U.S. at 639.

The Plaintiff's legal right must be clearly established at the appropriate level of specificity.

*Showers v. Spangler*, 182 F.3d 165, 172 (3d Cir. 1999).  "In sum, an official will not be liable for

allegedly unlawful conduct so long as his actions are objectively reasonable under current federal

law.  *See Malley v. Briggs*, 475 U.S. 335, 341 (1986)."  *Gruenke*, 225 F.3d at 299.

Although the inquiry is primarily legal, some factual allegations are necessary to resolve the

immunity question.  *See Mitchell*, 472 U.S. at 528.  This factual analysis must be conducted by

viewing the facts in a light most favorable to the Plaintiff.  *See Grant v. City of Pittsburgh*, 98 F.3d

116, 121 (3d Cir. 1996).

The Plaintiff alleges that the conduct of Defendant Holtzapple violated his Eighth

Amendment right, in that Defendant was deliberately indifferent to his serious left knee medical

condition, and that the delay in and denial of  treatment resulted in extreme pain and causes his

knee to give out when he walks.  We find that the medical records submitted by Defendants,

viewed in the light most favorable to Plaintiff, do not make out a constitutional violation.  *Bennett*

*v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001).  The evidence is not disputed as to whether Plaintiff

received quite extensive care for his left knee and that it was the ultimate decision of Dr. Lin that Plaintiff should be treated with pain medication and a non-operative treatment plan, and not our Defendants. Plaintiff's claim is clearly based on his belief that he was mistreated since he feels his knee condition requires surgery to correct it and not a non-operative treatment plan to care for it. As stated, the record is undisputed that Plaintiff's care regarding his knee was not in violation of the Eighth Amendment. (Doc. 31, Ex. 1 Att. #2). In fact, Defendants point out that Plaintiff was treated twelve (12) times for his left knee condition. (Doc. 30, p. 11). While Plaintiff does not dispute Defendants' evidence that he was treated 12 times for his knee, he states that made 12 complaints about his knee due to delay in his medical treatment. (Doc. 46, p. 3).

In his recently filed Brief in support of his motion to dismiss Defendants' dispositive motion, Plaintiff states without any supporting evidence that he has not been treated in accordance with Dr. Lin's non-operative treatment plan. (Doc. 46, p. 1). However, the medical records submitted by Defendants demonstrates that he has been properly treated with pain medications per Dr. Lin's recommendations. Plaintiff also argues that Defendants unduly delayed the treatment for his knee condition, causing his knee to further deteriorate. (*Id.*, p. 3). The record submitted by Defendants does not support this claim. Nor has Plaintiff offered any evidence to controvert Defendants' evidence in this regard. The record shows, as discussed above, that Defendant Laino responded to Plaintiff's request form for an MRI two (2) days after he received it and that Plaintiff was then given an MRI, as Dr. Lin recommended, soon thereafter. Plaintiff then received a follow-up evaluation with Dr. Lin, and surgery for his knee was not recommended.

The evidence is also undisputed that neither of our Defendants delayed treatment or

refused to give Plaintiff treatment at any time.  Again, Defendant Holtzapple's treatment of Plaintiff was consistent with the treatment prescribed by the orthopedic surgeon, Dr. Lin, and the decision that surgery for Plaintiff was contraindicated was not that of either of our Defendants, but was Dr. Lin's.  Plaintiff's evidence does not dispute Defendants' evidence.  Contrary to Plaintiff's assertion, there is ample evidence to show that Defendants were not deliberately indifferent to his serious knee condition.  The record is clear that Plaintiff did not suffer any extreme pain as a result of any conduct by our Defendants as a result of his alleged delayed treatment or failure to order surgery for him.  Plaintiff offers no evidence that any medical doctor or specialist ever ordered surgery for his knee and that it would have cured his knee condition.  Rather, the uncontested evidence reveals that surgery was not indicated for Plaintiff due to his lack of knee mobility and that surgery may cause Plaintiff even more loss of motion.  Thus, the expert recommended that Plaintiff be treated with pain medications and a non-operative plan.  These findings were not our Defendants', but were Dr. Lin's, and Plaintiff's dispute with them does not amount to an Eighth Amendment violation by our Defendants.

While the Plaintiff alleges that Defendants acted improperly regarding his treatment for his knee by not providing surgery for him, as discussed above, this does not amount to a constitutional violation.  We find that the evidence shows that Defendants were not deliberately indifferent to Plaintiff's medical care and that they did not deny him of any required medical care.  Rather, the evidence shows that the Plaintiff received treatment by an orthopaedic surgeon in November, 2003, that an MRI was done in May, 2004, and that the surgeon again evaluated Plaintiff in June, 2004.  Based on the exams of Plaintiff and the diagnostic test, the surgeon opined that the Plaintiff

did not need surgery on his knee.   A non-operative treatment plan for Plaintiff was ordered.   The Plaintiff is disagreeing with the surgeon's conclusion that surgery was not the proper treatment plan for him, and Plaintiff claims that despite the surgeon's opinion, the Defendants should have acted to ensure Plaintiff had surgery.

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988); *see also Durmer v. O'Carroll*, 991 F. 2d 64, 67 (3d Cir. 1993) ('[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation.")  As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).  Here, the undisputed evidence as well as Plaintiff's own exhibits show that he received treatment, including treatment by a specialist, for his left knee, and that surgery was not indicated.

Since we find merit to Defendants' dispositive motion, we shall not address Plaintiff's motion to dismiss Defendants' motion (Doc. 46), and we shall recommend that Plaintiff's Motion be denied.

## IV. Recommendation.

Based on the above, we respectfully recommend that Defendants' Summary Judgment Motion **(Doc. 29)** be granted with respect to Plaintiff's Eighth Amendment denial of medical care

claim, and that judgment be entered in favor of both Defendants and against Plaintiff.[11]  It is further recommended that Plaintiff's Motion to Dismiss Defendants' dispositive motion **(Doc. 46)** be denied.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 21, 2006**

---

[11]Since we reommend judgment for Defendants, we shall continue the stay on discovery in effect until the District Court rules on our Report and Recommendation.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDGAR GUZMAN, | : | CIVIL ACTION NO. **1:CV-04-2527** |
| Plaintiff | : | |
| | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| P. A. LAINO, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 21, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *Defendant novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

22

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
          _____     THOMAS M. BLEWITT
                                        United States Magistrate Judge


**Dated: March 21, 2006**